## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**CATHOLIC LEGAL IMMIGRATION**
**NETWORK, INC.**
8757 Georgia Avenue, Suite 850,
Silver Spring, MD 20910

**ALIANZA AMERICAS**
3101 Mission Street, Suite 101,
San Francisco, CA 94110

**NATIONAL TPS ALLIANCE**
2845 W. 7th Street
Los Angeles, CA 90005

        *Plaintiffs,*

v.

**UNITED STATES CITIZENSHIP AND**
**IMMIGRATION SERVICES**
20 Massachusetts Avenue, NW,
Washington, DC 20001

**UNITED STATES DEPARTMENT**
**OF HOMELAND SECURITY**,
3801 Nebraska Avenue, NW
Washington, DC 20016

**UNITED STATES DEPARTMENT**
**OF STATE**
2201 C Street, NW
Washington, DC 20520
        *Defendants*.

Case No. 8:20-cv-02042

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

   Plaintiffs Catholic Legal Immigration Network, Inc. ("CLINIC"), Alianza Americas, and

National TPS Alliance bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552 *et seq*, against Defendants United States Citizenship and Immigration Services ("USCIS"), U.S. Department of Homeland Security ("DHS"), and U.S. Department of State ("DOS") to compel Defendants to produce records responsive to Plaintiffs' FOIA requests.

## **INTRODUCTION**

1.      Since 2017, the Trump administration has sought to terminate Temporary Protected Status (TPS) for hundreds of thousands of individuals. In doing so, the administration appears to have relied on a highly politicized, *ultra vires* process that is motivated by racial animus towards non-European immigrants. The legality of the administration's TPS determinations has been the subject of multiple federal lawsuits and DHS has been enjoined from terminating TPS for certain countries by at least two federal courts.

2.       The determination to designate, extend, redesignate, or terminate TPS for a foreign state is circumscribed by the Immigration and National Act and requires the DHS secretary to consult with multiple agencies, which generally include Defendants' USCIS and DOS.

3.      In August 2019, Plaintiffs, two immigrant rights organizations and a coalition of TPS beneficiaries interested in the fair administration of immigration law in the United States, filed three FOIA requests seeking records from USCIS, DHS, and DOS related to TPS. The requests were spurred by concern about how TPS determinations are made and the role Defendants play in the designation and implementation of TPS.

4.      Although more than six months have elapsed since Plaintiffs submitted their requests, Defendants have refused to provide a single responsive document to Plaintiffs. Therefore, Defendants have improperly withheld responsive agency records and failed to comply with FOIA's statutory deadlines in violation of the FOIA statute.

5.      Plaintiffs brings this action to compel Defendants to immediately process and release to Plaintiffs all responsive records that they have unlawfully withheld.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court also has subject matter jurisdiction over this action and personal jurisdiction over all parties pursuant to 5 U.S.C. § 552(a)(4)(B).

7.      Venue in this district is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(C) because Plaintiff CLINIC's principal place of business is located in the District of Maryland.

## PARTIES

8.      Plaintiff CLINIC is a 501(c)(3) organization headquartered at 8757 Georgia Avenue, Suite 850, Silver Spring, MD 20910. CLINIC is a nonprofit organization supporting a national network of community-based legal immigration services programs with approximately 370 affiliates in 49 states and the District of Columbia. A large volume of initial and re-registrations for TPS are received and prepared by CLINIC's affiliates across the nation.

9.      Plaintiff Alianza Americas is a 501(c)(3) organization headquartered at 3101 Mission Street, Suite 101, San Francisco, CA 94110. It is the only transnational organization rooted in Latino immigrant communities in the United States and focused on improving the quality of life for all people in the U.S.-Mexico-Central America migration corridor. The organization engages in grassroots education, organizing, advocacy, and mobilization around TPS issues.

10.     Plaintiff National TPS Alliance is an unincorporated association of organizations and individuals headquartered at 2845 W. 7th Street, Los Angeles, CA 90005. The National TPS Alliance is formed and led by TPS beneficiaries from across the United States for the purpose of

combining advocacy efforts at a national level to save TPS for all beneficiaries in the short term and to devise legislation that creates a path to permanent residency in the long term. Approximately 1,000 TPS holders participate in the committees and anchor organizations that make up the National TPS Alliance.

11.     Defendant United States Citizenship and Immigration Services ("USCIS") is an agency of the United States Government and is headquartered at 20 Massachusetts Avenue, NW, Washington, DC 20001. USCIS is a component of the U.S. Department of Homeland Security ("DHS") and is an agency within the meaning of 5 U.S.C. § 552(f)(1). Among other duties, USCIS is responsible for administrating individual TPS benefits and presenting to the DHS Secretary recommendations with respect to TPS determinations.  Upon information and belief, USCIS has possession, custody, and control of certain public records to which the Plaintiffs seeks access.

12.     Defendant DHS is an agency of the United States Government and is headquartered at 3801 Nebraska Avenue, NW, Washington, DC 20016. DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1). DHS is responsible for designating countries whose nationals may receive TPS. Upon information and belief, DHS has possession, custody, and control of certain public records to which the Plaintiffs seeks access.

13.     Defendant U.S. Department of State ("DOS") is an agency of the United States Government and is headquartered at 2201 C Street, NW, Washington, DC 20520. Among other duties, DOS advises and recommends the DHS secretary with respect to TPS determinations. Upon information and belief, DOS has possession, custody, and control of certain public records to which the Plaintiffs seeks access.

## STATUTORY FRAMEWORK

14.     "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Fourth Circuit has also recognized that FOIA "discourages agencies from keeping in the dark actions that might not withstand the light of day. For that reason, 'disclosure, not secrecy, is the dominant purpose of the Act.'" *Hunton & Williams v. US Dep't of Justice*, 590 F.3d 272, 276 (4th Cir. 2010) (quoting *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

15.     To further this purpose, the FOIA statute, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public, unless a statutory exemption applies.

16.     Agencies have the burden "to act in good faith and exercise due diligence to make records available as quickly as possible, or invoke an exemption, and to improve their records management systems to enable prompt responses without routine judicial involvement." *Judicial Watch, Inc.*, 895 F.3d 770, 783 (D.C. Cir. 2018).

17.     Under FOIA, an agency must respond to a FOIA request within twenty (20) working days after receipt of a request, notifying the requestor of the agency's determination whether or not to fulfill the request, providing reasons for its determination, and informing the requester of the right to appeal the agency's determination. 5 U.S.C. § 552(a)(6)(A)(i). To satisfy this requirement a "'determination' under Section 552(a)(6)(A)(i) must be more than just an initial statement that the agency will generally comply with a FOIA request." *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013). Specifically, an agency "must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and

withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id*. An agency must similarly respond to an appeal of the agency's determination within twenty (20) working days of its receipt. 5 U.S.C. § 552(a)(6)(A)(ii).

18.     In "unusual circumstances," an agency may postpone its response to a FOIA request or appeal, but it must provide notice and "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B). Even under "unusual circumstances," an agency may not obtain an extension of more than ten (10) working days. 5 U.S.C. § 552(a)(6)(B)(i).

19.     In response to a FOIA request, an agency, after engaging in a reasonable search for responsive records, including of any field offices that may possess relevant materials, must disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions. 5 U.S.C. § 552(a)(3)(A); § 552(b)(1)-(9).

20.     A FOIA requestor is deemed to have exhausted his or her administrative remedies if an agency fails to comply with the statutory time limits for responding to a request. 5 U.S.C. § 552(a)(6)(C)(I).

21.     A district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS
### Temporary Protected Status

22.     Temporary Protected Status (TPS) is an immigration status that allows individuals from designated foreign countries to live and work in the United States because they cannot safely return to their homeland due to armed conflict, natural disaster, or extraordinary circumstances

that prevent their safe return. *See* 8 U.S.C. § 1254a. Congress created TPS as part of the Immigration Act of 1990 as a reflection of American humanitarian values and the United States' role as a "beacon of freedom and hope for the world" to those displaced from their homelands by havoc beyond their control. 126 Cong. Rec. H8687 (Oct. 2, 1990) (statement of Rep. Moakley).

23.     The TPS statute gives the DHS Secretary the authority to designate, redesignate, extend, or terminate TPS with respect to a particular foreign nation after consulting with appropriate government agencies. *See* 8 U.S.C. §§ 1254a(b)-(c), 6 U.S.C. § 557. These determinations must be based on criteria set out in the statute. *See* 8 U.S.C. § 1254a(b)(1). They include the existence of an ongoing armed conflict, environmental disasters, or other extraordinary conditions that prevent foreign nationals from safely returning to their homeland. *Id.*

24.     The Trump administration has sought to end TPS designations for a number of countries, which would potentially deprive hundreds of thousands of immigrants of legal status in the United States, even though the conditions in these states have not significantly changed and in some cases have worsened. The process by which the Trump administration has approached TPS termination and redesignation has lacked transparency and has been a complete departure from prior administrations' processes. Political pressure from the White House has led to abrupt policy reversals disfavoring designation or redesignation of TPS. The process also appears to have been motivated by animus against non-European immigrants. As a result, two district courts have issued preliminary injunctions enjoining the Trump administration from terminating TPS for certain countries. *See Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1079 (N.D. Cal. 2018); *Saget v. Trump*, 375 F. Supp. 3d 280, 295 (E.D.N.Y. 2019).

25.     Defendants USCIS, DHS, and DOS advise the DHS secretary about TPS determinations or play a role in the administration of TPS benefits.

26.     Disclosure of the requested information will contribute significantly to the public understanding of government operations and activities regarding TPS determinations. The requested information potentially impacts hundreds of thousands of TPS beneficiaries and potentially more individuals who may become TPS beneficiaries in the future.

**Plaintiffs' FOIA Requests**

<u>USCIS Request ("Request 1")</u>

27.     On August 12, 2019, Plaintiffs CLINIC, Alianza Americas, and National TPS Alliance submitted a FOIA request to Defendant USCIS requesting the following:

> "[C]opies of all records, **from January 20, 2017 through the date of this request,** containing the following information be provided:

1. Records containing **BOTH**:
    a. 'Temporary Protected Status,' 'TPS,' 'Deferred Enforced Departure,' **or** 'DED'; **and**
    b. 'America First.'
2. Records related to requests received by or originating from USCIS regarding criminal conduct, including arrests, convictions, or incarceration, for individuals from countries who currently hold or held TPS. Please provide copies of those requests and subsequent responses.
3. Records that made up the factual record, recommendations, and all materials considered related to USCIS's recommendation regarding whether to re-designate TPS for South Sudan, Syria, Yemen, Somalia in regards to DHS's most recent extension for each country.
4. Records related to USCIS's recommendation regarding whether to designate Guatemala for TPS in light of the recent volcanic eruption.
5. Records related to USCIS's recommendation regarding whether to designate Venezuela for TPS in light of the recent and ongoing civil unrest and humanitarian crisis.
6. The number of TPS holders who applied for TPS during every re-registration period for each country since January 20, 2017.
7. The number and percentage of approvals for every re-registration period for each country since January 20, 2017.
8. The actual number (not percentage) of denials for every re-registration period for each country since January 20, 2017.
9. Records related to the impact or relation between termination of TPS for all countries and consequences on U.S. citizen children of those TPS holders.

10. Records related to communication from the Domestic Policy Council regarding the decision to terminate, extend, and/or redesignate TPS for all countries.

11. Records related to communication from the National Security Council regarding the decision to terminate, extend, and/or redesignate TPS for all countries.

12. USCIS failed to adjudicate timely re-registration and EAD applications for nationals from El Salvador, Haiti, Syria, and Honduras following the most recent decision for each country. These processing delays are unprecedented and resulted in TPS holders not receiving their new EAD before the automatic extension of work authorization ran out, jeopardizing their livelihoods. Consequently, USCIS issued Notices of Evidence of Continued Work Authorization for these populations.

    a. Please provide the number of Notices of Evidence of Continued Work Authorization that USCIS mailed to all individuals with TPS, broken down by country.

    b. Please provide information regarding whether USCIS issued a second round of Notices of Evidence of Continued Work Authorization for individuals from these countries once the initial notices expired. If so, please provide a number of notices mailed, broken down by country.

    c. Records related to USCIS's decision to employ Notices of Evidence of Continued Work Authorization *instead* of a Federal Register Notice, especially in light of legal experts expressing serious concerns regarding the compliance of these notices with the Administrative Procedure Act.

13. Records containing the number of Tentative Nonconfirmations (TNCs) for TPS and DED holders, broken down by month and country.

14. Records related to USCIS's failure to properly accept requests for employment authorization documents on behalf of Liberian DED holders, including improper rejections on erroneous grounds that Liberia did not have a current grant of DED.

15. Records containing **BOTH**:

    a. 'Temporary Protected Status,' 'TPS,' 'Deferred Enforced Departure,' **or** 'DED'; **and**

    b. 'Federation for American Immigration Reform';

    c. 'FAIR';

    d. 'Center for Immigration Studies';

    e. 'Immigration Reform Law Institute', **or**

    f. 'IRLI'."

A copy of Request 1 is attached as Exhibit A. Plaintiffs additionally requested a fee waiver.

28. Plaintiffs received an acknowledgement letter dated August 28, 2019 from USCIS confirming receipt of Plaintiffs' FOIA request on August 12, 2019, granting the fee waiver request, and assigning the request control number COW2019501121. A copy of USCIS' acknowledgement letter is attached as Exhibit B. In this letter, USCIS invoked the 10-day extension authorized under

5 U.S.C. § 552(a)(6)(B). *See* Ex. B. The agency referred to the increased number of FOIA requests and the scope and nature of the request as constituting "unusual circumstances" justifying the extension. *Id*.

29.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), USCIS was required to determine whether to comply with Plaintiffs' FOIA request within twenty (20) working days after receipt of the request and to notify Plaintiffs immediately of its determination, the reasons therefore, and the right to appeal any adverse determination. Accordingly, USCIS's determination of Plaintiffs' FOIA request was due by September 10, 2019.

30.     Even under the "unusual circumstances" invoked by USCIS, an agency can obtain at most an extension of ten (10) working days. 5 U.S.C. § 552(a)(6)(B)(i). Therefore, USCIS's determination of Plaintiffs' FOIA request was due by September 24, 2019 at the latest.

<u>DOS Request ("Request 2")</u>

31.     On August 12, 2019, Plaintiffs CLINIC, Alianza Americas, and National TPS Alliance submitted a FOIA request to Defendant DOS requesting the following:

"[C]opies of all records, from January 20, 2017 through the date of this request, containing the following information be provided:

1. Records containing BOTH:
   a. 'Temporary Protected Status,' 'TPS,' 'Deferred Enforced Departure,' or 'DED';
   b. 'America First.'
2. Records that made up the factual record, recommendations, and all materials considered related to State's recommendation regarding whether to re-designate TPS for South Sudan, Syria, Yemen, Somalia in regards to DHS's most recent extension for each country.
3. Records related to State's recommendation regarding whether to designate Guatemala for TPS in light of the recent volcanic eruption.
4. Records related to State's recommendation regarding whether to designate Venezuela for TPS in light of the recent and ongoing civil unrest and humanitarian crisis."

A copy of Request 2 is attached as Exhibit C. Plaintiffs additionally requested a fee waiver.

10

32.     Plaintiffs received an acknowledgement letter dated August 26, 2019 from DOS confirming receipt of Plaintiffs' FOIA request on August 15, 2019, granting the fee waiver request, and assigning the tracking number F-2019-09041. A copy of DOS' acknowledgement letter is attached as Exhibit D. In this letter, DOS also invoked the 10-day extension authorized under 5 U.S.C. § 552(a)(6)(B) for "unusual circumstances" because the records sought "require the need to search in offices that are separate from the office processing your request." *See* Ex. D. The letter noted that "[b]ecause of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute." *Id*.

33.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), DOS was required to determine whether to comply with Plaintiffs' FOIA request within twenty (20) working days after receipt of the request and to notify Plaintiffs immediately of its determination, the reasons therefore, and the right to appeal any adverse determination. Accordingly, DOS's determination of Plaintiffs' FOIA request was due by September 13, 2019.

34.     Even if DOS is granted 10 extra days for "unusual circumstances," its determination of the request was due by September 27, 2019.

<u>DHS Request ("Request 3")</u>

35.     On August 13, 2019, Plaintiffs CLINIC, Alianza Americas, and National TPS Alliance submitted a FOIA request to Defendant DHS requesting various records related to TPS. A copy of the initial Request 3 is attached as Exhibit E. On September 3, 2019, DHS sent a letter acknowledging the receipt of Plaintiffs' FOIA request and assigning it a reference number. A copy of DHS's first acknowledgment letter is attached as Exhibit F. The letter requested Plaintiffs resubmit a perfected request as the original request was too broad or did not specifically identify the records sought. *Id.*

36.     On September 24, 2019, Plaintiffs filed a perfected request seeking:

"[C]opies of all records, **from January 20, 2017 through the date of this request directed to or originating from the DHS Office of the Secretary,** containing the following information be provided:

1. **NARROWED REQUEST.** Records originating or directed to the DHS Office of the Secretary containing at least one phrase from each of the following categories:
    a. 'Temporary Protected Status' **or** 'TPS' **or** 'Deferred Enforced Departure' **or** 'DED'; **and**
    b. 'America First'.

2. **NARROWED REQUEST.** Records originating or directed to the DHS Office of the Secretary related to state or federal agencies regarding history of criminal conduct, including arrests, convictions, or incarceration, for individuals from countries who currently hold or held TPS or DED. Specifically, records containing at least one phrase from each of the following categories:
    a. 'Temporary Protected Status' **or** 'TPS' **or** 'Deferred Enforced Departure' **or** 'DED'; **and**
    b. 'Conviction' **or** 'arrest' **or** 'criminal'.

3. Records originating or directed to the DHS Office of the Secretary related to DHS's most recent decision to extend, but not re-designate TPS for South Sudan, Syria, Yemen, Somalia, including recommendations issued by USCIS and the State Department regarding re-designation. Specifically, we request records containing at least one phrase from each of the following categories:
    a. 'Temporary Protected Status,' **or** 'TPS' **and**
    b. 'Redesignation' **or** 'Re-designation' **and**
    c. 'South Sudan' **or** 'Syria' **or** 'Yemen' **or** 'Somalia'.

4. **NARROWED REQUEST.** Records originating or directed to the DHS Office of the Secretary related to DHS's decision to not designate Guatemala for TPS in light of the recent volcanic eruption, including recommendations from USCIS and the State Department. Specifically, we request records containing at least one phrase from each of the following categories:
    a. 'Temporary Protected Status,' or 'TPS;' **and**
    b. 'Guatemala'.

5. **NARROWED REQUEST.** Records originating or directed to the DHS Office of the Secretary related to DHS's decision making process to not designate Venezuela for TPS in light of recent and ongoing civil unrest and humanitarian crisis including recommendations from USCIS and the State Department. Specifically, we request records containing at least one phrase from each of the following categories:
    a. 'Temporary Protected Status," or 'TPS;' **and**
    b. 'Venezuela'.

6. **REQUEST STRUCK.** Records related to the impact or relation between termination of TPS for all countries and consequences on U.S. citizen children of those TPS holders.

7. **REQUEST NARROWED.** Records originating or directed to the DHS Office of the Secretary related to communication from the Domestic Policy Council regarding the decision to terminate, extend, and/or redesignate TPS for all countries.

8. **REQUEST NARROWED.** Records originating or directed to the DHS Office of the Secretary related to communication from from the National Security Council regarding the decision to terminate, extend, and/or redesignate TPS for all countries.

9. **REQUEST NARROWED.** Records originating or directed to the DHS Office of the Secretary containing at least one phrase from category (a) and one phrase from category (b), (c), (d), (e), or (f):
   a. 'Temporary Protected Status,' 'TPS,' 'Deferred Enforced Departure,' **or** 'DED'; **and**
   b. 'Federation for American Immigration Reform'; **or**
   c. 'FAIR'; **or**
   d. 'Center for Immigration Studies'; **or**
   e. 'Immigration Reform Law Institute', **or**
   f. 'IRLI'.

A copy of the perfected Request 3 is attached as Exhibit G.

37.    Plaintiffs also added one request not in the original FOIA:

"**1. NEW REQUEST.** We request that copies of all records, from **January 20, 2017 through the date of this request directed to or originating from U.S. Citizenship and Immigration Services, Identity Services Directorate (IRIS), Verification Division** containing data related to Tentative Nonconfirmations (TNCs) for nationals from El Salvador with TPS. This request includes spreadsheets or other records that contain metrics related to the issuance of TNCs for El Salvador, including records produced by E-Verify and SAVE."

*Id*. Plaintiffs additionally requested a fee waiver.

38.    Plaintiffs received an acknowledgement letter dated October 30, 2019 from DHS confirming receipt of Plaintiffs' perfected FOIA request on September 24, 2019, conditionally granting the fee waiver request, and assigning a new reference number 2019-HQFO-01186. A copy of DHS's second acknowledgment letter is attached as Exhibit H. DHS also invoked the 10-day extension authorized under 5 U.S.C. § 552(a)(6)(B) for "unusual circumstances" because the "request seeks a voluminous amount of separate and distinct records." *Id*.

39.    Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), DHS was required to determine whether to comply with Plaintiffs' perfected FOIA request within twenty (20) working days after receipt of the request and to notify Plaintiffs immediately of its determination, the reasons therefore, and the

right to appeal any adverse determination. Accordingly, DHS's determination of Plaintiffs' perfected FOIA request was due by October 22, 2019.

40.     Even with the 10 extra days for "unusual circumstances," DHS's determination of the request would have been due by November 5, 2019.

<u>Administrative Appeals</u>

41.     On December 3, 2019, after the statutory time limit with respect to all three FOIA requests had elapsed without Defendants producing the requested documents or making a determination on Plaintiffs' FOIA requests, Plaintiffs administratively appealed Defendants' constructive denial of the FOIA requests based on Defendants' failure to make a determination within the statutory deadline. Copies of the DHS, DOS, and USCIS administrative appeals are attached as Exhibits I, J, and K respectively.

42.     Plaintiffs received a letter dated December 11, 2019 from DOS rejecting the appeal of Request 2 and noting that the request is not subject to administrative appeal where no response has been provided.  A copy of DOS's response is attached as Exhibit  L. Plaintiffs also received a letter dated January 14, 2020 from USCIS similarly asserting that Request 1 is not subject to administrative appeal and inviting Plaintiffs to seek judicial review if unsatisfied with its response. A copy of USCIS's response is attached as Exhibit  M.

43.     Plaintiffs received a letter dated December 16, 2019 from DHS acknowledging the receipt of the appeal to Request 3 and assigning it number 2020-HQAP-00069. A copy of DHS's appeal acknowledgement is attached as Exhibit N.

44.     On January 3, 2020, DHS emailed Plaintiffs asking that Request 3 be narrowed. A copy of this email is attached as Exhibit O. DHS's email appeared to confuse the initial Request

3, *see* Ex. E, with the perfected and narrower Request 3, *see* Ex. G. Accordingly, on January 16, 2020, Plaintiff responded asking for a clarification in case there is confusion and also addressing DHS's concerns in case it sought further narrowing of the perfected Request 3. A copy of this email is attached as Exhibit P. DHS never responded to the email.

45.     On April 15, an officer assigned to the FOIA appeal reached out via email to Plaintiffs to confirm that the appeal is ongoing and has not been resolved. As DHS had not provided any response to the original request or appeal, Plaintiffs confirmed that the appeal is ongoing.

46.     As of the date of this Complaint, more than 200 working days after filing the requests, Defendants have not produced the requested documents or made a determination on Plaintiffs' FOIA requests.

47.     Because Defendants have failed to comply with the FOIA statutory time limits, Plaintiffs are deemed to have exhausted any and all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of the Freedom of Information Act**
**5 U.S.C. § 552(a)**
**Request 1**

48.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if set forth fully herein.

49.     Plaintiffs have exhausted all administrative remedies with respect to Request 1 under 5 U.S.C. § 552(a)(6)(C)(i).

50.     Plaintiffs have a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to the records requested, and there is no legal basis for Defendant USCIS's failure to disclose them.

15

51.     Upon receiving Plaintiffs' Request 1, Defendant USCIS was obligated under 5 U.S.C. § 552(a) to promptly conduct a reasonable search for records responsive to Request 1 and to produce any responsive records.

52.     As of the date of this Complaint and in violation of the deadlines set forth in 5 U.S.C. § 552(a)(6), Defendant USCIS has failed to disclose and release records in violation of 5 U.S.C. § 552(a).

53.     Defendant USCIS has not identified any legal basis for their failure to timely conduct a reasonable search for, and to produce, responsive records.

54.     The failure by Defendant USCIS to conduct reasonable searches for records responsive to Request 1 and to produce responsive records violates 5 U.S.C. § 552(a) and the regulations promulgated thereunder.

## SECOND CLAIM FOR RELIEF
### Violation of the Freedom of Information Act
### 5 U.S.C. § 552(a)
### Request 2

55.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if set forth fully herein.

56.     Plaintiffs have exhausted all administrative remedies with respect to Request 2 under 5 U.S.C. § 552(a)(6)(C)(i).

57.     Plaintiffs have a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to the records requested, and there is no legal basis for Defendant DOS's failure to disclose them.

58.     Upon receiving Plaintiffs' Request 2, Defendant DOS was obligated under 5 U.S.C. § 552(a) to promptly conduct a reasonable search for records responsive to Request 2 and to produce any responsive records.

59.     As of the date of this Complaint and in violation of the deadlines set forth in 5 U.S.C. § 552(a)(6), Defendant DOS has failed to disclose and release records in violation of 5 U.S.C. § 552(a).

60.     Defendant DOS has not identified any legal basis for their failure to timely conduct a reasonable search for, and to produce, responsive records.

61.     The failure by Defendant DOS to conduct reasonable searches for records responsive to Request 2 and to produce responsive records violates 5 U.S.C. § 552(a) and the regulations promulgated thereunder.

**THIRD CLAIM FOR RELIEF**
**Violation of the Freedom of Information Act**
**5 U.S.C. § 552(a)**
**Request 3**

62.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if set forth fully herein.

63.     Plaintiffs have exhausted all administrative remedies with respect to Request 3 under 5 U.S.C. § 552(a)(6)(C)(i).

64.     Plaintiffs have a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to the records requested, and there is no legal basis for Defendant DHS's failure to disclose them.

65.     Upon receiving Plaintiff's Request 3, Defendant DHS was obligated under 5 U.S.C. § 552(a) to promptly conduct a reasonable search for records responsive to Request 3 and to produce any responsive records.

66.     As of the date of this Complaint and in violation of the deadlines set forth in 5 U.S.C. § 552(a)(6), Defendant DHS has failed to disclose and release records in violation of 5 U.S.C. § 552(a).

67.     Defendant DHS has not identified any legal basis for their failure to timely conduct a reasonable search for, and to produce, responsive records.

68.     The failure by Defendant DHS to conduct reasonable searches for records responsive to Request 3 and to produce responsive records violates 5 U.S.C. § 552(a) and the regulations promulgated thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

A.  Declare that Defendants' withholding of the records requested is unlawful;

B.  Order Defendants to immediately conduct a full, adequate, and expedited search and make the requested records available to Plaintiffs;

C.  Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to the Requests;

D.  Grant Plaintiffs an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.  Grant Plaintiffs such other relief as the Court deems just and proper.


Dated: July 10, 2020            Respectfully submitted,

                                /s/ Amber Qureshi
                                Khaled Alrabe*
                                Amber Qureshi
                                National Immigration Project of the
                                National Lawyers Guild
                                2201 Wisconsin Ave, NW, Suite 200
                                Washington, DC 20007
                                Tel: (510) 679-3994
                                alrabe@nipnlg.org
                                amber@nipnlg.org

                                Victoria Neilson*

Michelle N. Mendez (Bar No. 20062)
Catholic Legal Immigration Network (CLINIC)
8757 Georgia Avenue, Suite 850
Silver Spring, MD 20910
Phone: 540-907-1761
Fax: 301-565-4824
vneilson@cliniclegal.org
mmendez@cliniclegal.org

*application for pro hac vice admission forthcoming